UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARCELLOUS L. WALKER,

    Plaintiff,

v.                               Case No. 22-C-858

JACOB CIRIAN, et al.,

    Defendants.

## SCREENING ORDER

Plaintiff Marcellous L. Walker, who is currently serving a state prison sentence at Wisconsin Secure Program Facility and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the Court on Walker's motion (and second motion) for leave to proceed without prepaying the full filing fee, motion for a temporary restraining order and motion for a preliminary injunction, and for screening of the complaint. Dkt. Nos. 1, 3-4 & 8.

**MOTIONS FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

Walker has requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Walker has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and has been assessed and paid an initial partial filing fee of $24.93. Walker's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and dismiss any complaint, or portion thereof, if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

2

## ALLEGATIONS OF THE COMPLAINT

Walker is an inmate at the Wisconsin Secure Program Facility (WSPF). Dkt. No. 1, ¶4. Defendants are WSPF Security Director Jacob Cirian, Inmate Complaint Examiner (ICE) J. Payne, and the Wisconsin Department of Corrections (DOC). *Id.*, ¶¶5-7.

For four years, between October 2016 and November 2020, Walker and fellow inmate Jalonnie Carter worked together to draft a fictional book series loosely based on each of their lives. *Id.*, ¶¶11-30. After all was said and done, the final hand-written draft would have been about 300 typed pages and would have cost hundreds of dollars to type-up and print-out at the institution. *Id.*, ¶¶31-32. Rather than spending that exorbitant amount of money, Walker emailed the story to his friend, who printed out a final hardcopy of the "manuscript" and mailed it to the institution on December 17, 2020. *Id.*, ¶¶38, & 43-48. At that time, WSPF mailroom staff reviewed the manuscript and gave it to Walker. *Id.*, ¶48. Walker was aware that the manuscript would have to be approved by the institution prior to publication, so he had been inquiring about the proper way to do so. *Id.*, ¶¶ 50-51. On December 27, 2020, Walker was told to contact Cirian. *Id.*, ¶51.

A few days later, Walker spoke to Cirian about the manuscript review process. *Id.*, ¶¶ 52-58. Walker expressed concern about having to hand over the only existing copy of his manuscript. *Id.*, ¶53. Cirian told him to fill out a disbursement request so he could make a second copy of the manuscript. *Id.*, ¶54. Cirian said at the time that, if the manuscript contained identities or negative descriptions of the DOC, it would be confiscated. *Id.*, ¶56. Walker completed a disbursement request as directed and submitted his manuscript to Cirian for review. *Id.*, ¶55. Walker asked how long it would take and Cirian responded "Today. Tomorrow at the latest." *Id.*, ¶58.

Weeks went by and Walker did not hear back about his manuscript. *Id.*, ¶¶59-63. He also never received a second copy of his manuscript. *Id*. Walker followed up several times but did not get a straight answer from anyone. *Id*. Finally, on February 1, 2021, Cirian told Walker that the

3

manuscript was being confiscated because: (1) it described drug use, use of weapons, and sexual activity; (2) it was not hand-written or typed on a personal typewriter; and (3) it "had exchanged hands" between Walker and inmate Carter. *Id.*, ¶64. Walker asked for return of the manuscript so he could fix the issues, but Cirian said no. *Id.*, ¶65.

The following day, on February 2, 2021, Walker received written notice explaining that the manuscript was being confiscated. *Id.*, ¶67. The notice contained no other information about *why* the manuscript was being confiscated; it only noted that the manuscript would be "retained" so Walker could appeal the decision through the Inmate Complaint Review System (ICRS). *Id.*, ¶68. Walker later wrote to Cirian asking what prison policies he believed the manuscript violated, and Cirian identified the following provisions: Wis. Admin Code DOC §§309.00.52(I)(D), §§ 309.00.52(IV)(B) 2, 3, 10, and §§309.00.52(II)(B). *Id.*, ¶¶69-80.

About a month later, in March 2021, Cirian "rejected" an email Walker tried to send to friends and "several non-profit organizations serving prisoners and their families" about a female correctional officer who was allegedly fired from the institution after complaining about sexual harassment by superiors. *Id.*, ¶¶81-94. The email mentioned the correctional officer's name, described her as a person who "treated inmates as people," and stated she'd be "a good ally" and would likely have information about the illegal things the guards and officials at the prison were doing. Walker stated he thought she lived within 75 miles of Boscobel and suggested the recipients of the email "might be able to get her to volunteer time for nonprofit work." *Id.*, ¶89. Cirian rejected the email (meaning, it could not be sent) because Walker allegedly violated §309.04(c)(9), which prohibits inmates from sending mail that "contains information that, if communicated, would create a clear danger of physical or menta harm to any person." *Id.*, ¶92.

Walker filed an inmate complaint about the confiscation of his manuscript and the censorship of his March 2021 email. *Id.*, ¶¶95-111. ICE Payne, without talking to Walker, agreed

4

with Cirian's reasoning as to both decisions. *Id*., ¶¶97 & 111. Walker states that his manuscript does not violate any of the prison rules noted above and Cirian's concerns regarding drugs, weapons, and sexual activity were exaggerated. *Id*., ¶¶76-78, 80, & 101-110. He also denies that his email places anyone in danger. For relief, Walker seeks monetary damages, immediate return of his manuscript, and for his March 2021 email to be sent. *See* Dkt. No. 1 at 24-26.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Under the First Amendment, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union,* 535 U.S. 564, 573 (2002). The United States Supreme Court has specifically explained that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). But freedom of speech in the prison context "is of course limited by the prison's legitimate concerns with security." *Toston v. Thurmer*, 689 F.3d 828, 829 (7th Cir. 2012) (citing *Turner,* 482 U.S. at 107). Courts must generally defer to the professional judgment of prison administrators about the effect of inmate speech on prison safety. *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003).

Restrictions on inmate speech are constitutional if they are reasonably related to legitimate penological interests. *Turner v. Pollard*, 564 F. App'x 234, 237 (7th Cir. 2014) (citing *Turner,* 482 U.S. at 89). The Court considers four factors to judge the restriction's constitutionality: (1) the validity and rationality of the connection between a legitimate and neutral government objective

5

and the restriction; (2) whether the prison leaves open "alternative means of exercising" the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns. *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). Prison officials, however, must still justify its interest in restricting access to the particular material. *Id*.

Walker states that Cirian confiscated his manuscript based on disagreement with its content. With respect to the manuscript, Walker alleges that Cirian completely foreclosed any alternative means of exercising the right by refusing to let him fix the manuscript. Walker also alleges that Cirian exaggerated the prison's security concerns regarding drugs, weapons, and sexual activity because the manuscript was already reviewed and approved by mailroom staff when it arrived at the institution in December 2020. Walker also states that life "on the streets" involves drugs, weapons, and sexual activity and it is difficult to tell his story without mentioning such things. Dkt. No. 1, ¶¶12-20. He states that briefly mentioning these things in his manuscript does not pose a legitimate security risk and Cirian is exaggerating the security concern. Based on these allegations, Walker may proceed with a First Amendment claim against Cirian regarding confiscation of his manuscript in February 2021.

The analysis is different with respect to Walker's rejected email. As the Seventh Circuit explained in *Koutnik v. Brown*, 456 F.3d 777, 781 (7th Cir. 2006), restrictions on outgoing inmate mail are scrutinized under the standard espoused in *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled on other grounds* by *Thornburgh v. Abbott*, 490 U.S. 401 (1989). And, as the court further explained, "there are two prongs to the *Martinez* test. 'First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression.' *Martinez*, 416 U.S. at 413, . . . Such interests include 'security, order,

6

and rehabilitation.' *Martinez*, 416 U.S. at 413. Second, the challenged action 'must be no greater than is necessary or essential to the protection' of that interest. *Id.*" *Koutnik*, 456 F.3d at 784.

Walker disputes that his email subjected any person to a threat of harm. His allegations are sufficient to state a claim under Martinez for violation of his First Amendment right to send mail. He may thus proceed on that claim as well.

The Court will dismiss ICE Payne and the DOC from the case. Walker alleges that ICE Payne "subjected his rights to free speech and expression to unjustifiable restraint and which could have been averted by faithful implementation of the prison grievance machinery." Dkt. No. 1 at 24. But Walker concedes that ICE Payne reviewed his inmate complaints, made a ruling on the inmate complaints, and included some reasoning for his rulings. Dkt. No. 1, ¶¶95-111. Walker's assertion that ICE Payne interfered with the "faithful implementation of the prison grievance machinery" is contradicted by his own allegations. Walker's disagreement with ICE Payne's decision is not enough to state a §1983 claim. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). Further, Walker has already sued Cirian in his official capacity for injunctive relief, *see* Dkt. No. 1, ¶5; therefore, Walker's claim against the DOC is redundant. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."). Further, Walker cannot seek monetary damages from the DOC. *Id*. Thus, the Court will dismiss ICE Payne and the DOC from the case.

### MOTION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION

Walker also filed a motion for a temporary restraining order and motion for a preliminary injunction. Dkt. No. 8. He seeks immediate return of his manuscript and an order directing that his email be sent. *Id*.

To obtain preliminary injunctive relief, whether through a temporary restraining order or preliminary injunction, Walker must show that: (1) he has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) he will likely suffer irreparable harm in the absence of preliminary relief. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Irreparable harm is "harm that 'cannot be repaired' and for which money compensation is inadequate." *See Orr v. Shicker,* 953 F.3d 490, 502 (7th Cir. 2020)(internal citations omitted). Before deciding whether to grant such relief, it is appropriate to allow the defendant to respond. Walker has made no showing that allowing a response will cause irreparable harm. Accordingly, the defendant will be directed to accompany his answer to the complaint with a response to Walker's motion for a preliminary injunction.

## Conclusion

The Court finds that Walker may proceed on a claim that Cirian violated the First Amendment by confiscating his manuscript in February 2021, and rejecting his email in March 2021.

**IT IS THEREFORE ORDERED** that J. Payne and the Wisconsin Department of Corrections are **DISMISSED** from the case.

**IT IS FURTHER ORDERED** that Walker's second motion for leave to proceed without prepayment of the filing fee (Dkt. No. 4) is **GRANTED**; and his first motion for leave to proceed without prepayment of the filing fee (Dkt. No. 3) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Walker's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Cirian.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Cirian shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that Defendant shall file a response to Walker's motion for a preliminary injunction along with his response to the complaint.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the **$325.07** balance of the filing fee by collecting monthly payments from Walker's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Walker is transferred to another institution, the transferring institution shall forward a copy of this order along with Walker's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Walker is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Walker may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 15th day of September, 2022.

    s/ William C. Griesbach
    William C. Griesbach
    United States District Judge